2015-16-69 We'll hear from Mr. Wawiecki when he is ready. Mr. Wawiecki, we're merciful, we're Polish. If I made you pronounce it Lorbecki, it would be difficult. May it please the Court. The remedy that I seek before the Court is that the Court properly construe either of Claim 1 or either properly construe Claim 1 to include continuous motion or, in fact, allow the amendment to explicitly state continuous motion is appropriate in this case. The findings of the PTAB are emblematic of an incomplete job, and it is for that reason that I believe that remand is the appropriate way to deal with the matters raised. Well, you say an incomplete job. You've got a reference to Roe's reference and, in fact, Cite's Chandler. Between the two of them, isn't everything there? Your Honor. Even if the Patent Office didn't quite do it the way you'd like? to the Court and to the world by the fact that the same two references are referred to both as 102 and 103. The law of 102 and the law of anticipation is different than the law of obviousness. Anticipation requires that it be found within the four corners. Argued in the brief is the fact that the Board had the obligation to determine whether Chandler was entirely incorporated into Roe's, and if it was, then that limits the teaching of Roe's to Chandler. If that is the teaching, it is the teaching in 102. Therefore, a finding of obviousness is not either necessary or appropriate in this case. Why can't there be alternative grounds? Well, alternative grounds, I think— One being anticipation, the other one being obviousness. Well, because the question is, what does Roe's contain? And it's my belief that the determination as to whether this is fully incorporated in Roe's means that there would be no reason to determine 103 obviousness if it is fully incorporated, because all of the elements either arguably would or would not be present in Roe's. But if the elements are stretched across both references, then what it means is it's an obviousness case. And there, the factual point that the petitioner's own expert was not willing to or was not able to connect the Roe's and Chandler devices in his deposition and was not able to point out how they connected is important. It's a factual issue at that point and necessary. So the question then becomes, what's appropriate? What's the appropriate meaning of Claim 1? And is it found completely, 102, in Roe's as it incorporates Chandler? Or is it, in fact, 103, where the factual issue of whether a person skilled in the art, which Dr. Kagan held himself out to be, can then put the devices together in order to get a unified whole? What's your point, that Roe's doesn't disclose the plurality of entries? The plurality of stalls, the rotating carousel, and the nature of the rotation of the carousel. Well, certainly rotating is in Roe's, isn't it? Pardon me, Your Honor? Rotating is in Roe's, isn't it? How it rotates is important, as we've stood on the fact that— You mean that it's continuous? Exactly. Intermittent motion is not a species of motion. It is a qualification of motion, motion bracketed with periods of repose. During the periods of repose, no motion is occurring. If you notice, in Claim 1 itself, it talks about a moving, not a movable, carousel. I think that's important. Certainly, if it read the other way, it would be a different claim. The selection of the terms of the claim are important. What's your view, that because it says moving, that suggests continuous movement alone in itself, because moving wouldn't include something that temporarily is not moving? Exactly, Your Honor. Movable would include that. What about on this continuously moving? I mean, your own expert at A626 paragraph 35 admitted that continuously moving platforms were known in the art. Why wouldn't that be interchangeable anyway? It's well known in the art. It would not be interchangeable, Your Honor, because the ROSE device required the stopping of the carousel in order to perform its work. And as such, it would not work on a continuous carousel. It's the how of ROSE that's important here. And when given the opportunity to posit how that would work, in deposition, Dr. Kagan elected not to explain it. It's a factual issue of how it would work. But if it won't work, then it ought not to essentially be the basis of finding this unpatentable. They had the opportunity to present that evidence. That was the purpose of having an expert present. So patents are a property right. Removing them, invalidating them, taking them out of the hands of the patent holder is something that requires the full judicial work necessary to invalidate. It's the position of the appellant that it hasn't occurred yet. As such, we should have had a clear indication. Is this a 102 case? Do we argue the 102 case? Is this a 103 case where the facts then become the most important determinant? So an article back for crossing of the T's and dotting of the I's. At very least, Your Honor. The confidence of the public is involved. And you think the results will be the same, different? No. This is where the point about Dr. Kagan being unwilling or unable to connect the two shows that there wasn't an operating device. And that's important, Your Honor. I think that falls within the scope of the factual inquiry that the PTAB was charged with, pursued, and found an incomplete result. I have to compliment you on the pictures of the cows. You've all enjoyed the artistry. Well, Your Honor, I wish I could take— I couldn't tell if they were Jersey, Guernsey, or Holstein. I'm originally from Minnesota. I could. Surely you've been to the National Dairy Shrine in Wisconsin. Well, at least certainly I've passed through that territory, yes. And you'll have to recall that one of the derogatory terms that we use when Vikings fans are there is we call our perennial opponents cheeseheads. But returning, of course, to why I've come out here, the fact of the matter is that there was an obligation for the PTAB to knit all of this up. It's a severe issue to remove the property right that we had to exclude others from practicing the teat washer. It's an important technology. It's coming online now. And it's one that we believe we rightfully own and own to the exclusion of the other party involved here, DeLaval. These are two of the biggest dairy equipment manufacturers in the world. Neither of them located here. The fact of the matter is that this is important to both. It's the only reason we're here today. And so it's an important property right. If we are going to lose that important property right, it better be on a full record in order to preserve the confidence that one has. Our position is that there is nothing in the patent that speaks to anything but continuous motion. Every place that it is referred to within the patent, it specifically disclaims any other type of motion in the specification. Does Charles passing by impose any particular condition or constraint on how and when? I think, Your Honor, that what it does do is it shows a consistent intent of the drafter to speak of a continuous motion. Stahls passing by obviously means that something is moving. Stahls can't pass by if the carousel is stationary. Sure, but they can move and then stop for washing and then move or however it is done. Certainly, certainly. But remember, this court decided that, in fact, in Phillips, in Microsoft versus Proxicon, that the whole of the patent must be consistent. It must be read consistently. This is not, as the board stated, a mere embodiment, a single embodiment of further teaching. That's kind of cheating, honestly. It's clear that in a summary of an invention, if those limitations were there, certainly, if they were otherwise determinative of an outcome, they would have been cited against anyone trying to push the patent against an intermittent motion carousel. Correct. Mr. Lubecki, you wanted to save Roboto? Oh, yes, Your Honor. Thank you. You can use it or save it. I appreciate the reminder. Mr. Patch. May it please the court. Good morning, Your Honors. Andrew Patch for the Appellee DeLaval. I'd like to address the claim construction issue first because I believe this is positive of the invalidation of the patent claims. The phrase that the board construed is stalls passing by said cleaning location. There's just nothing in that phrase, in the plain meaning of that phrase, that would require continuous motion of the rotating platform relative to the cleaning location. It seems to just suggest that the cleaning location is stationary and the rotating platform passes by it. We referred to seconds hand of a watch in our brief as a way of thinking about it. As I was driving in this morning, it occurred to me that my motion was certainly not continuous, unfortunately. I did eventually make it from point A to point B and in the process passed by every intermediate location. And that's all that the patent claim says, all that it requires. But I think that the conclusion is underscored by the fact that the patent in suit really is directed to the cleaning device, whereas the milking parlor with which it is used is characterized as conventional. There's no description of the mechanism for driving the milking parlor. There's no description in the patent of any significance for the platform to be rotating continuously. In fact, there's just one mention of continuous rotation. And it occurs in the context of saying the platform is rotating continuously but it's very slow and therefore the cows can get off without too much trouble. It doesn't seem to have any connection, any relationship to the operation of the cleaning device. And so my colleagues contention that the Rose reference and Chandler somehow required an intermittent rotation in which to operate doesn't find basis in the record. There's no indication that in order for Rose to function, an intermittently rotating milking parlor would be required. Is there any evidence to the contrary to support what you're saying? And if so, where would that be in the record? Well, there is, I would say, an admission against interest in the sense that at final hearing, the board queried whether a skilled artisan would be unable to modify Rose as needed to work on a continuously rotating milking parlor. And the reply was, I don't know and the expert doesn't know either. And so that, I think, really arises in the context of the board's denial of Lely's motion to amend, nevertheless. On page 826, the board says something like neither the patent nor its expert contend that it would have been beyond the ordinary skill at the time of the invention to modify Rose's automated spray device so that it could be used on a milking apparatus with a continuously rotating platform and then gives a site. Is that the, and you might not know the answer to this, but is that the site that you're referring to? It is the site that I'm referring to. And what I did was to go directly to the underlying site, which is at 897 lines 12 through 17. So then with respect to Rose, you have a cleaning device, which is the same as in the patent ensued. And it's utilized on a rotating platform. So absent the board having erred in its construction of the claim, there's really no issue with respect to the prior art rejection. These points of supposed distinction between anticipation and obviousness here are really no distinction at all because the Chandler reference is referred to in Rose itself. So there's no question about the so-called combinability of the two references. Rose says for a rotating platform, we can use the one described in Chandler, which happens to be intermittent. But again, that's neither here nor there on either of the two principal issues. In other words, that is to say the claims as they exist in the patent and the claims as Lely moved unsuccessfully to amend them. If that's it, we'll move on. I will allow the solicitor to chime in on the procedural aspects of the motion to amend practice and the board's denial of the same. It wasn't really addressed in the appellant's opening. I'm happy to address it if your honors would like, but I'm not happy to wrap up at this point. Thank you, Ms. Patch. Ms. Schoenfeld, we've granted the Patent Office five minutes to address its concerns with procedure here. Yes. Thank you. May it please the Court. As the moving party, Lely had the burden to demonstrate by the preponderance of the evidence that the substitute claims were patentable. As the board found, the Claim 11 represented a combination of known, commonly used milking apparatuses with the Rose's automated spray device. The evidence that one of ordinary skill in the art would know about this combination was in the patent itself, which admits that the continuous rotating platform is conventional. The expert testimony, which was referenced earlier, that their own expert said that the continuous platform was conventional, and then with the Rose automated spray device. No evidence was presented that the combination would have been beyond one of ordinary skill in the art, and as we discussed earlier, in fact, when Judge Wood of the PTAB questioned Lely's counsel about if it would have been beyond the ordinary skill of the art to combine the conventional rotating device with the automated spray device, he said he didn't know. So, unless there's further questions, I'll yield the rest of my time. Thank you very much. Thank you. I'll bet he has a little rebuttal time, if he wishes. Yes, Your Honor. The issue about the amendment is important, I believe, to us, and that is the fact that there could be, imagine, no narrower or more narrowing type of amendment than simply to put in the express requirement that the carousel rotate continuously. The question was asked whether, at the time that the motion was denied, had we presented evidence that it would be admissible. We adopted, at that point, the preliminary statement of the patent owner as the statement of patentability, because, in essence, it's an identical issue. We had already presumed continuous motion and then simply adopted. We made a point to which the director did respond about the fact that 15 pages at the time was a very scant amount to address what was necessarily a larger topic. The response was, well, wait a second. Well after you were required to respond, the director issued quick fixes. Now one doesn't fix what isn't broken. Therefore, these quick fixes and allowing, for instance, claims to be placed in an appendix, essentially workarounds for the page limit, were adopted after the time that, in fact, we were required to submit. So they really weren't available to us at the time. The fact of the matter is that, even if they had been, there was really no additional information to add. We had argued in the patent owner's preliminary statement that these were admissible even over the cited art, and that's exactly the same position that we held. So that's where that lies. I guess I'll surrender back my minute. Thank you, Your Honor. Thank you. We'll take the case on revision.